UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DONRICO HUMPHREY**<br>**BOP #28050-044** | **CIVIL ACTION NO. 2:11-cv-1495** |
| | **SECTION P** |
| **VERSUS** | |
| | **JUDGE TRIMBLE** |
| **LT. CHILDRESS, ET AL** | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is the *pro se* civil rights complaint[1] filed in *forma pauperis* on August 12, 2011, by plaintiff Donrico Humphrey.  Plaintiff is an inmate in the custody of the Federal Bureau of Prisons (BOP) and is currently incarcerated at the Federal Correctional Institute, Herlong (FCIH), California.  He complains of events that occurred when he was incarcerated at the Federal Correctional Institute, Oakdale (FCIO), Louisiana.  He names the following as defendants herein: FCIO Warden Joe Young, Correctional Officers F. Odom, Rick Smith, Guise, O. Ashworth, C. Trammel, Thomas, and E. Murphy; FCIO Deputy Captain Valle; Security Investigative Services (SIS) Lieutenant Childress; and, FCIO Special Housing Unit (SHU) Lt. Emberton and SHU Senior Specialist Tony Locks.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

---

[1] **Error! Main Document Only.**Because it alleges civil rights violations by federal defendants, this action is construed as one brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).  In *Bivens*, the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 USC § 1983.

## STATEMENT OF THE CASE

Plaintiff alleges civil rights violations as a result of defendants' actions in regard to his homosexual lifestyle. He states that the defendants failed to protect him "knowing that my homosexual behavior was risky, addictive and against policy." (Doc 1, p. 3). More specifically, plaintiff states that while he was housed in FCIO's Special Housing Unit (SHU) he was housed in the same cell with his lover and fellow inmate Deante George.

Plaintiff states that Lt. Emberton separated him and George on October 13, 2009, because other inmates allegedly heard them engage in a sexual act. For this reason, Lt. Emberton informed plaintiff that he and George would never again be housed in the same SHU cell. (Doc. 1, p. 5). While in administrative segregation from October 15, 2009, through February 4, 2010, plaintiff alleges that he and George were "not allowed to see each other via recreation, being cell mates or even housed on the same range. These were instructions from the SIS Lt. Childress, SHU Lt. Emberton and both SHU #1's Thomas and T. Locks." (Doc. 5, p. 3).

According to plaintiff inmate George was a member of two gangs, neither of which permitted homosexual behavior. He states that the gangs told plaintiff and inmate George that they had to leave FCIO. (Doc. 1, p. 3). Plaintiff states that on June 16, 2009, he was attacked by inmate Kenny Mcillwain, a member of the Gangster Disciples gang, because he was homosexual and due to his relationship with George. (Doc. 5, p. 5). The incident report concerning this matter states that both inmates were throwing punches. (Doc. 5, p. 6).

Further, plaintiff alleges that when he was housed with inmate Rafel Gonzalez, Gonzalez spoke to defendant Locks and, during the conversation, Locks called plaintiff a "faggot." Thereafter, on November 8, 2009, Gonzalez ordered plaintiff to move out of the cell. (Doc. 1, p. 5). Plaintiff states that he told officers that he felt threatened and needed to be moved out of

Gonzalez's cell but that his request was ignored by J. Wheat, C. Trammel, Lt. Childress, and other staff members. *Id.*

A fight between plaintiff and Gonzalez ensued on November 8, 2009.  The incident report from this matter states that at 9:50 a.m., Officer Wheat observed plaintiff standing over and striking inmate Gonzalez.  Plaintiff refused orders to stop striking Gonzalez and to submit to restraints.  As a result, plaintiff was charged with a disciplinary violation and was sanctioned with the loss of good time credit.  (Doc. 1, Att. 2, p. 1).

Plaintiff states that on January 8, 2010, he wrote to assistant wardens Boyle and Everhart regarding the harassment and discrimination that he and inmate George were receiving.  He also requested that they be allowed to go to recreation together or housed in the same cell.  (Doc. 1, p. 5).  Plaintiff's requests were denied and on February 4, 2010, he and George were placed into the general population against their will.  (Doc. 1, p. 5).

On February 17, 2010, plaintiff claims that he and George were told by the "muslims [sic] that we better leave the compound 'or else.'"  (Doc. 1, p. 6).  Plaintiff then asked to be placed in protective custody and states that "while doing so Deante George was attacked and abused by a total of 4 Correctional Officers and 1 Lieutenant because he refused to provide any names of the perpetrators. SIS Lt. Childress knew this was an ongoing issue prior to placing us back into the general population." (Doc. 1, p. 6).

Plaintiff claims that on February 17, 2010, correctional officer Rick Smith went to plaintiff's cell and announced within hearing distance of the entire housing range that Lt. Childress and Deputy Captain Valle ordered plaintiff to be housed with his "boyfriend." (Doc. 1, p. 6). On March 3, 2010, George was moved into plaintiff's cell.  Plaintiff states that this led to a lot of humiliation, harassment, and embarrassment from inmates and officers.  (Doc. 1, p. 6).

On May 7, 2010, plaintiff states that George was temporarily moved out of plaintiff's cell so that George could serve five days of detention. George was housed with inmate L. Billy and there were rumors of an intimate relationship. It was also rumored that L. Billy had Hepatitis B. George moved back into plaintiff's cell on May 15, 2010, and they remained cellmates until August 6, 2010. Plaintiff was then transferred to FCI Phoenix and George was released on September 30, 2010. Plaintiff states that both he and George tested positive for Hepatitis B. (Doc. 1, p. 6).

Plaintiff contends that rather than protect him, the defendants engaged in conversations with other inmates promoting his sexual relationship. He also stated that "no matter what my sexual addiction craved for, my lover Deante George was never supposed to have been housed with me in the first place." (Doc. 1, p. 6).

As a result of the above alleged constitutional violations, plaintiff seeks declaratory, compensatory, and punitive relief. (Doc. 1, p. 4).

## LAW AND ANALYSIS

### 1. *Frivolity Review*

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Under 28 U.S.C. §1915(e)(2)(B), a district court is directed to review and dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153

F.3d 211, 215 (5th Cir. 1998).  When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

The court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for relief, that his claims are frivolous as a matter of law, and that his complaint should therefore be dismissed with prejudice.

   2. *Failure to Protect*

Plaintiff alleges that defendants failed to protect him from harm, specifically from attacks, threats, and harassment by other inmates.

Plaintiff was a convicted inmate at the time of the events on which he bases his claims, so that the Eighth Amendment standard applies.  Under the Eighth Amendment, prison officials have a duty to protect inmates from harm and to take reasonable measures to protect their safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir.1996). However, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834.  Only deliberate indifference, "an unnecessary and wanton infliction of pain" or acts "repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50

L.Ed.2d 251 (1976); accord *Gregg v. Georgia*, 428 U.S. 153, 182-83, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

In this case, plaintiff's own complaint establishes that defendants were not deliberately indifferent to a serious risk of harm under the federal constitutional standard because he confirms that no serious harm befell him. He was involved in two altercations with other inmates in 2009, and was medically assessed after both. (Doc. 1, Att. 2, p. 1, Doc. 5, p. 6). The other "harm" that he experienced consisted of verbal threats and harassment. For the reasons discussed below, these allegations do not constitute constitutional violations. Plaintiff's fear of physical harm does not state a sustainable cause of action. Plaintiff also concedes that he was largely housed in the SHU, thus further removing him from harm.

Further, to the extent that plaintiff may be suggesting that the defendants failed to protect him from harm in that they failed to keep him segregated from his partner from whom he contracted Hepatitis B, his claim is without merit. Both he and George were released/transferred from FCIO by the time they tested positive for Hepatitis B. (Doc. 1, p. 6). Thus, plaintiff's own complaint establishes that defendants were not deliberately indifferent to a serious risk of harm under the federal constitutional standard as the defendants did not even know that either inmate was positive for Hepatitis B when they were housed in the same cell.

Based on the above, all of plaintiff's claims for failure to protect from harm must be dismissed.

### 3. *Verbal Abuse*

Plaintiff also complains that some of the defendants openly discussed his sexual orientation. To the extent that plaintiff claims that this represents abuse or harassment, such fails to raise a federal constitutional claim.

A plaintiff can successfully invoke § 1983 only when his federal statutory or constitutional rights have been violated.  The Fifth Circuit has held that verbal abuse/harassment or name-calling by a prison guard does not amount to an Eighth Amendment violation.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993)).  The "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir.1995).  "Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment …" *Jackson v. Liberty County*, 860 F.Supp. 360, 363 (E.D.Tex.1994).  In this case, plaintiff's allegations do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief can be granted.

4. *Injunctive Relief*

As previously stated, plaintiff has been transferred from FCIO.  Therefore, his requests for injunctive relief are moot.

The law is clear that the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot.  *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief).  In order for plaintiff's claims to remain viable, he would have to establish that the possibility of returning to FCIO would make his claims capable of repetition yet evading review.  See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975).

Plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at FCIO. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). The standard is not "mathematically precise" and requires that plaintiff show a "reasonable likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Even under the most permissive interpretation, plaintiff's complaint does not, meet that standard and his request for injunctive relief is now moot. See, *Herman v. Holiday*, 238 F.3d 660 (5th Cir.2001)(even if plaintiff had established an Eighth Amendment violation, his transfer from the offending institution rendered his claims for declaratory and injunctive relief moot) citing *Cooper v. Sheriff, Lubbock County, Tex.,* 929 F.2d 1078, 1084 (5th Cir. 1991).

5. *Loss of Good Time Credit/Disciplinary Proceedings*

To the extent that plaintiff may seek monetary damages because of the disciplinary hearings that resulted in the loss of good time credit, his complaint fares no better.[1]

Prisoners cannot bring a civil rights action pursuant to § 1983 action seeking damages based upon irregularities in a prison disciplinary proceeding that resulted in the forfeiture of good time credits if a favorable judgment in this civil rights action would necessarily imply the invalidity of the disciplinary conviction at issue. The offending disciplinary conviction must have been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus. *Edwards v. Balisok*, 520 U.S. 641, 644, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (citing *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994)).

---

[1] The incident report dated November 8, 2009 attached as "Exhibit A" to plaintiff's complaint shows that he was sanctioned with a loss of good time credit for that incident. (Doc. 1, Att. 2, p. 1).

It is clear that a judgment in plaintiff's favor in this proceeding would, of necessity, call into question the validity of the underlying disciplinary proceedings; therefore, he cannot obtain monetary damages relative to the disciplinary convictions until such time as they have been reversed, expunged, or otherwise set aside and that has not happened. Thus, to the extent that plaintiff seeks monetary damages for his prison disciplinary convictions, his complaint must be dismissed as frivolous.

## CONCLUSION

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C.1915A(b)(1).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 2nd day of May, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE